UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TYRONE HOUSTON,

                          Plaintiff,         Case # 14-CV-6609-FPG

v.                                               DECISION AND ORDER

R. COVENY, et al.,

                          Defendants.
_____

## INTRODUCTION

On October 28, 2014, *pro se* Plaintiff Tyrone Houston sued numerous Defendants pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights. ECF No. 1. Defendant Lester Cady is the only remaining defendant in this case. ECF No. 119. Plaintiff alleges that Defendant subjected him to sexual abuse, excessive force, and retaliation on three occasions—September 22, 2015 and December 22 and 31, 2015—in violation of his First and Eighth Amendment rights. ECF No. 85.

On October 28, 2019, Defendant moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 127. Plaintiff made a cross motion for summary judgment. ECF No. 137. In Plaintiff's reply to his motion for summary judgment, he appears to bring motions *in limine* and to appoint counsel. ECF No. 140 at 6, 9. For the reasons that follow, Plaintiff's motion for summary judgment (ECF No. 137) is DENIED and Defendant's motion for summary judgment (ECF No. 127) is GRANTED IN PART and DENIED IN PART. Plaintiff's motions *in limine* and to appoint counsel (ECF No. 140) are DENIED WITHOUT PREJUDICE TO RENEW.

# BACKGROUND[1]

On September 22, 2015, Plaintiff was an inmate at Five Points Correctional Facility. On that day around 8:10 a.m., Plaintiff was heading to the law library when Defendant directed him to put his hands on the wall for a pat frisk. Defendant submitted a sworn declaration wherein he averred that part of his job that morning "was to conduct random searches of inmates for contraband" and that he frisked Plaintiff "as part of a random search of inmates traveling in that part of the prison at that time of the day." ECF No. 127-3 ¶¶ 4, 6. Plaintiff alleges that Defendant said: "Put your hands on the wall—you want to keep writing me up? Now I'm going to fuck you." ECF No. 135 at 1.

Two weeks earlier, on September 8, 2015, Plaintiff wrote a letter to the Superintendent of Five Points complaining about two other corrections officers. In that letter, Plaintiff wrote that he wanted the Superintendent to "stop allowing prisoner guard [C]ady to illegally encourage and influence their judgments." ECF No. 138 at 16. Defendant affirmed that he did not know about the September 8 letter when he frisked Plaintiff on September 22. ECF No. 127-3 ¶ 7. Nonetheless, Plaintiff believes that the letter was the reason for Defendant's actions that day.

Defendant pat frisked Plaintiff over his clothes while inmates passed them in the hallway and another corrections officer stood next to Defendant and searched Plaintiff's papers. Security cameras recorded the interaction, and this footage was submitted to the Court. The video reveals that the entire interaction lasted about three minutes and that Defendant had his hands on Plaintiff for about one minute and fifteen seconds. Defendant avers that he frisked Plaintiff "in a professional and thorough manner" the same way he frisks all other inmates. ECF No. 127-3 ¶ 9.

---

[1] The Court draws these facts from the parties' Rule 56 Statements, which are undisputed unless otherwise noted. ECF No. 127-1; ECF No. 135.

Plaintiff tells a very different story about the pat frisk. He alleges that Defendant "violently" pulled his pants upward, which squeezed his genital and rectal areas tightly, kicked his right foot, and squeezed his penis "real hard twice, causing painful swelling and bloody urinations." ECF No. 138 at 2. Defendant admits touching Plaintiff's buttocks and genitals as part of the pat frisk but maintains that he "did not do this for any sexual gratification" and "did not squeeze any part of [P]laintiff's genitals." ECF No. 127-3 ¶¶ 14-15.

The undisputed facts about the December 22 and 31 incidents are sparse. According to Defendant, Plaintiff alleges that he frisked him on those days the same way he frisked him on September 22. Defendant also asserts that the December 22 incident was not the subject of a grievance and that neither the December 22 nor December 31 incidents were fully appealed. Therefore, Plaintiff did not properly exhaust claims related to those incidents.

Plaintiff's Second Amended Complaint reveals that, on December 22, Defendant allegedly hit Plaintiff in the left knee so hard that it bent, made threatening comments to him, stole his program card, and put him in keeplock in retaliation for Plaintiff's grievance about the September 22 incident. ECF No. 85 at 4-5. Defendant avers that he does not recall pat frisking Plaintiff on December 22 and that prison officials advised him that there is no known grievance related to this date. ECF No. 127-3 ¶ 17. Nonetheless, Defendant states that he conducts all his frisks in the same manner "for the purpose of institutional safety and not for the intent of sexual gratification." *Id.*

On December 31, Defendant allegedly "sexually and maliciously" pat frisked Plaintiff by "touching and hitting his genitalia area hard" and threatened to put contraband in Plaintiff's cell and beat his head into the wall. ECF No. 85 at 5. Plaintiff also claims that Defendant rammed his arm into Plaintiff's back and "hit [his] genitalia hard twice," which caused painful swelling to his

left testicle. *Id.* Defendant avers that he did not touch Plaintiff "with any intent of sexual gratification" on that day. ECF No. 127-3 ¶ 16.

## LEGAL STANDARD

A court grants summary judgment when the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a)-(b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It is the movant's burden to establish the nonexistence of any genuine issue of material fact. If there is record evidence from which a reasonable inference in the non-moving party's favor may be drawn, a court will deny summary judgment. *Id.*

Once the movant has adequately shown the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to present evidence sufficient to support a jury verdict in its favor, without simply relying on conclusory statements or contentions. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing Fed. R. Civ. P. 56(e)). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). To survive a motion for summary judgment on § 1983 claims, the plaintiff must offer concrete evidence from which a reasonable juror could conclude that the defendants deprived him of the rights, privileges, or immunities guaranteed to him by law. *See Johnson v. Davis*, No. 12-CV-2449, 2015 WL 1286764, at *2 (E.D.N.Y. Mar. 20, 2015).

Here, in light of Plaintiff's *pro se* status, the Court will construe his opposition papers liberally "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2009) (quotation and citation omitted). Nevertheless, proceeding *pro*

*se* does not relieve Plaintiff from the usual summary judgment requirements. *See Wolfson v. Bruno*, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011).

## DISCUSSION

Plaintiff alleges that Defendant subjected him to sexual abuse, excessive force, and retaliation on three occasions—September 22, 2015 and December 22 and 31, 2015—in violation of his First and Eighth Amendment rights. ECF No. 85. The Court addresses each claim for each incident in turn.

### I. September 22, 2015 Incident

#### A. Sexual Abuse Claim

A corrections officer violates an inmate's Eighth Amendment right to be free from cruel and unusual punishment when he makes "intentional contact with an inmate's genitalia or other intimate area" and that contact "serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate." *Telesford v. Wenderlich*, No. 16-CV-6130 CJS, 2018 WL 4853667, at *9 (W.D.N.Y. Oct. 5, 2018) (citing *Crawford v. Cuomo*, 796 F.3d 252, 254 (2d Cir. 2015) [hereinafter "*Crawford I*"]).

A single incident may "reach constitutional significance if sufficiently severe or serious," but, "[a]t the same time, there are searches of an intensely personal nature that are not properly the subject of a lawsuit." *Id.* (quotation marks and citations omitted). A court's "principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Id.* (citation omitted).

Here, Plaintiff insists that the pat frisk involved the squeezing of his genitals and that Defendant said "I'm going to fuck you" while frisking him. ECF No. 135 at 1, 4. Another inmate

5

averred to hearing the same. ECF No. 135 at 27. Defendant argues that he conducted a random pat frisk on Plaintiff in a "professional and thorough manner" without squeezing Plaintiff's genitals to search for contraband but makes no mention of whether he spoke to Plaintiff during the frisk. ECF No. 127-3 at 1-2.

The alleged manner of the pat frisk of Plaintiff's genitals coupled with Defendant's alleged comments as overheard by another inmate create a question of fact as to whether the pat frisk was "undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate." *See Hayes v. Dahkle*, No. 9:16-CV-1368 (TJM/CFH), 2018 WL 7356343, at *12 (N.D.N.Y. Dec. 11, 2018), *report and recommendation adopted*, 2019 WL 689234 (N.D.N.Y. Feb. 19, 2019) (collecting cases indicating that "offensive remarks" made during pat frisk would not violate Eighth Amendment unless the comments allude to officer's current or future sexual contact with the inmate); *Shepherd v. Fisher*, No. 08-CV-9297 (RA), 2017 WL 666213, at *19 (S.D.N.Y. Feb. 16, 2017) (denying summary judgment on plaintiff's sexual abuse claim where officer commented during pat frisk that "he was going to fuck [plaintiff] in [his] ass with [a hand] scanner." (internal quotation marks omitted)); *cf. Torres v. City of New York*, No. 17 Civ. 6604 (GBD) (DCF), 2019 WL 4784756, at *5 (S.D.N.Y. Sept. 30, 2019) (dismissing plaintiff's sexual abuse claim where officer touched his buttocks during contraband search but officer had not "said anything of a sexual nature during the course of the search"); *Allen v. Graham*, No. 9:16-CV-0047 (GTS/ATB), 2017 WL 5957742, at *6 n.6, 7 (N.D.N.Y. Dec. 1, 2017) (collecting cases holding that pat frisks involving only touching of plaintiffs' genitals accompanied by "inappropriate" comments do not violate the Eighth Amendment, particularly when plaintiffs did not allege any associated pain due to the pat frisk).

Because there is an issue of fact, Defendant's and Plaintiff's motions for summary judgment are DENIED with respect to Plaintiff's sexual abuse claim.

**B.     Excessive Force Claim**

To determine whether prison officials used excessive force in violation of the Eighth Amendment, a court considers "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). To succeed on such a claim, a plaintiff must prove objective and subjective elements. *Id.* at 7-8.

The objective element is "contextual and responsive to contemporary standards of decency," *id.* at 8-9 (quotation and citation omitted), and requires that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). Thus, the Eighth Amendment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (quotation marks and citation omitted). "Consequently, not every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9 (citation omitted).

The subjective component "requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000) (quotation marks and citations omitted). Whether the defendant's conduct was "wanton" turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Blyden*, 186 F.3d at 262-63.

7

Plaintiff claims that he suffered bloody urine, a swollen testicle, and bladder wall thickening as a result of Defendant's pat frisk. ECF No. 135 at 8-9, 15. An inmate injury report from the day of the incident indicates that Plaintiff's anus and scrotum were examined and showed "excoriations/redness/swelling." ECF No. 138 at 22. Yet, a progress note from a medical visit the day after the alleged incident states that there are "no visible injuries" to Plaintiff's scrotum or anus. ECF No. 135 at 29. Plaintiff points to the results of a urinalysis that shows Plaintiff's urine is positive for the presence of blood and a progress note indicating Plaintiff has a swollen left testicle as further proof of his injuries. ECF No. 135 at 31; ECF No. 141. The urinalysis was conducted on a sample of Plaintiff's urine taken 17 days after the incident. ECF No. 135 at 30-31. The progress note showing Plaintiff has a swollen testicle is dated more than four years after the incident. ECF No. 141.

The nature of these alleged injuries, if caused by Defendant's part frisk, creates a question of fact as to whether they are more than *de minimis*. *See Brown v. Jones*, 471 F. App'x 420, 420-21 (5th Cir. 2012) (vacating grant of summary judgment to officer on excessive force claim where plaintiff alleged that "during a pat down search [the officer] struck him in the groin and squeezed his testicles . . . . result[ing] in both immediate and continuing pain, as well as an injury that resulted in blood in his urine"); *Scalpi v. Amorim*, No. 14-CV-2126 (KMK), 2018 WL 1606002, at *19-20 (S.D.N.Y. Mar. 29, 2018) (indicating allegations "that [the defendant] struck [plaintiff] so hard in the testicles that his testicles were swollen and he was urinating blood," and "[t]o this day, [the] [p]laintiff maintains he suffers from pain in his testicular area and has blood in his urine" would allow excessive force claim to survive summary judgment (citation omitted)).

There is also a question of fact as to whether Defendant acted wantonly. The Second Circuit has considered the following factors when assessing whether a defendant acted maliciously or wantonly in applying force:

> [T]he extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quotation and citation omitted).

Plaintiff alleges that he was frisked in this manner for naming Defendant in a grievance letter prior to the frisk, complaining of Defendant's encouragement and influence on other guards' judgment. ECF No. 138 at 16. Defendant denies knowledge of the letter when he randomly selected Plaintiff for a pat frisk. ECF No. 127 at 1-2. Otherwise, there is little information in the record pertaining to Defendant's mental state precipitating the pat frisk.

There is no question that "conducting pat frisks on prisoners is a necessary procedure to ensure safety and security of prisons, and correction officers are authorized to conduct random pat frisks on free movement inmates going to or coming from services and programs." *Tavares v. City of New York*, No. 08 Civ. 3782(PAE)(JCF), 2011 WL 5877550, at *6 (S.D.N.Y. Oct. 17, 2011) (quotation and citation to record omitted). However, given the nature of Plaintiff's injuries, the temporal proximity of the grievance letter to the incident, and the seeming lack of threat or need for force as indicated by the video evidence, there is a question of fact as to whether Defendant acted wantonly in how he conducted the pat frisk. *See Santiago v. C.O. Campisi Shield No. 4592*, 91 F. Supp. 2d 665, 673 (S.D.N.Y. 2000) ("[P]laintiff has satisfied his burden on [the subjective excessive force] element by merely pleading a scenario in which the use of force could not have been in good faith."); *cf. Hayes*, 2018 WL 7356343, at *13 (ruling plaintiff had not satisfied summary judgment burden on subjective element of excessive force claim when record was clear

9

that force was justified in response to plaintiff's assault on staff member). *But see Fox v. Lee*, No. 9:15-CV-0390 (TJM/CFH), 2018 WL 1211111, at *24 (N.D.N.Y. Feb. 25, 2018) (denying plaintiff's summary judgment motion on excessive force claim where plaintiff "self-serving[ly]" alleged officer was "furious" at him for filing grievance and record lacked other evidence of officer's mental state); *Caldwell v. Crossett*, No. 9:09–CV–576 (LEK/RFT), 2010 WL 2346337, at *4 (N.D.N.Y. May 24, 2010) (finding that grabbing of plaintiff's testicles during pat frisk, resulting in "exchange of words" and plaintiff being slammed against a wall, did not satisfy subjective element of excessive force claim because force was used to ensure compliance with orders).

Accordingly, with respect to Plaintiff's excessive force claim, both Plaintiff's and Defendant's motions for summary judgment are DENIED.

### C. Retaliation Claim

To prevail on a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in constitutionally protected speech or conduct; (2) the defendant took adverse action against him; and (3) there is a causal link between the protected conduct and the adverse action. *Williams v. King*, 763 F. App'x 36, 38 (2d Cir. 2019) (citation omitted) (summary order). Adverse action is conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003).

Because courts "recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, [they] examine prisoner's claims of retaliation with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Here, Plaintiff alleges that he was frisked and

threatened for naming Defendant in a grievance letter written two weeks prior. Defendant denies knowledge of the letter when he randomly selected Plaintiff for a pat frisk. ECF No. 127 at 1-2.

There is no dispute that Plaintiff's use of the prison grievance system is a protected activity. *Hayes v. Dahkle*, No. 9:16-CV-1368 (TJM/CFH), 2017 WL 9511178, at *7 (N.D.N.Y. Oct. 30, 2017), *report and recommendation adopted as modified*, 2018 WL 555513 (N.D.N.Y. Jan. 19, 2018) (collecting cases). However, "pat frisks, even if conducted for retaliatory reasons, cannot constitute an adverse action as required to support a First Amendment retaliation claim" because "prisoners have no legitimate expectation of privacy." *Amaker v. Fischer*, No. 10-CV-0977A (Sr), 2014 WL 8663246, at *8 (W.D.N.Y. Aug. 27, 2014), *report and recommendation adopted*, 2015 WL 1822541 (W.D.N.Y. Apr. 22, 2015) (internal quotation and citation omitted). Thus, a pat frisk of the type Plaintiff alleges does not constitute an adverse action for purposes of a retaliation claim. *Joseph v. Annucci*, No. 18-cv-7197 (NSR), 2020 WL 409744, at *5 (S.D.N.Y. Jan. 23, 2020) (holding a " pat frisk . . . in which [officer] 'squeez[ed]' and 'pok[ed]' [plaintiff's] chest, arms, legs, and 'private parts' was not retaliatory); *Amaker*, 2014 WL 8663246, at *8 (holding an officer's pat frisk consisting of "rubbing plaintiff's penis, fondling and squeezing plaintiff's buttocks and running his index finger across plaintiff's anus" was not retaliatory).

Accordingly, with respect to Plaintiff's retaliation claim, Defendant's motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.

II. **Failure to Exhaust Administrative Remedies for the December 22, 2015 and December 31, 2015 Incidents**

Defendant argues that any allegations stemming from the December 22, 2015 incident should be dismissed because the incident was never the subject of a grievance complaint and that the December 31, 2015 complaint was never fully appealed—thus, Plaintiff has failed to exhaust his administrative remedies for either incident. ECF No. 127-5 at 4-5. Plaintiff argues that the

December 22, 2015 incident was consolidated with his December 31, 2015 grievance and thus he has exhausted his administrative remedies. ECF No. 135 at 11.

The exhaustion process is as follows:

> Pursuant to the [Prison Litigation Reform Act] ["PLRA"], "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).
> "To satisfy that requirement, prisoners in New York must ordinarily follow a three-step DOCS grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee [("IGRC")]. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC"). In general, it is only upon completion of all three levels of review that a prisoner may seek relief in federal court under § 1983." *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (citations omitted) (granting motion for summary judgment filed in lieu of answer because plaintiff did not file grievances or appeals to CORC).
> In addition to the normal grievance process, when an inmate in the custody of DOCCS makes an allegation of sexual abuse, the allegation is referred to the Inspector General's Office, which performs an investigation. *See Amador v. Andrews,* 655 F.3d 89 (2d Cir. 2011) ("[A]n IG investigation of alleged acts of sexual abuse is an integral part of the internal grievance procedure."). The Inspector General's determination following its investigation can also be appealed to CORC. *Id.* ("[A]n IG determination about abuse of an inmate can be appealed to CORC when the determination is reported to and accepted by the superintendent.").

*Omaro v. Annucci*, 68 F. Supp. 3d 359, 363 (W.D.N.Y. 2014).

It appears from the record that Plaintiff's December 22 grievance was never received by the IGRC, or, in the alternative, was consolidated with the December 31 grievance complaint. In any event, while complaint FPT-31235-16 appears to have been appealed to the prison superintendent, it was not appealed to CORC. ECF No. 134 at 8, 10-11. Therefore, Plaintiff has not exhausted his administrative remedies for either the December 22 or 31 incidents.

It is clear from the record that Plaintiff made two separate grievance complaints, one dated December 22, 2015[2] and one dated December 31, 2015. ECF No. 135 at 34, 38-39. Both the December 22 and December 31 complaints are labeled with Grievance Number FPT-31235-16. ECF No. 135 at 34, 38-39. Only the December 31 complaint is labeled with Prison Rape Elimination Act ("PREA") number 2016-01 and only the December 31 complaint is stamped as being received by the IGRC on January 7, 2016. ECF No. 127-4 at 7, 13. Defendant submitted a log report of Plaintiff's grievances from 2015 and 2016 showing ostensibly only one grievance for the December 31 incident.[3] ECF No. 127-4 at 5-6. The two complaints may in fact have been consolidated,[4] making it plausible that only one grievance would be noted in the correctional facility's log report. However, there is no copy of the December 22 complaint in the record that bears a stamp from the IGRC. Thus, there is no evidence in the record that indicates the December 22 complaint was ever received by the IGRC.[5]

A February 3, 2016 notice from the Superintendent stated that "the allegations contained in [the FPT-31235-2016] complaint have been investigated as a PREA. #2016-01 [sic]. The investigation found that the allegations could not be substantiated. Grievance is denied." ECF No. 134 at 8. A February 5, 2016 letter from the Inmate Grievance Program Supervisor stated that

---

[2] The complaint is dated at the top as "11/22/15" but dated and signed at the bottom on December 22, 2015 and discusses the December 22, 2015 incident. Thus, the Court assumes the complaint was made on December 22, 2015.

[3] The log report is accompanied by a certification signed by Brenda Griffin, an office assistant for DOCCS, attesting to the veracity of the log report. ECF No. 127-4 at 5. Plaintiff's allegations that Defendant has made "false and misleading representations" concerning the veracity of the log report or that Defendant "altered" or "doctored" the log report and his medical records are conclusory and unsubstantiated. ECF No. 127-4 at 5; ECF No. 138 at 5-6; ECF No. 140 at 1, 5.

[4] *See generally Fox*, 2018 WL 1211111, at *5 (noting plaintiff's grievance complaints alleging similar issues and made within ten days of each other were consolidated into one grievance).

[5] The "Violation Hearing Disposition" Plaintiff submitted indicating that a Tier I hearing was scheduled to address the allegations of misbehavior against Plaintiff from the December 22 incident appears to relate to the process for determining whether Plaintiff committed the acts of misbehavior alleged, and does not relate to the grievance process for Plaintiff's complaint against Defendant stemming from that incident. ECF No. 135 at 35, 36.

Plaintiff's complaint was filed as FPT-31235-16 and that Plaintiff's "PREA allegations will be deemed exhausted upon filing for Prison Litigation Reform Act (PLRA) purposes. [Plaintiff's] additional allegations (harassment, retaliation, denial of meals, false misbehavior report, etc.) will be investigated and addressed." ECF No. 135 at 43. Thus, the December 31 complaint was appealed to the Superintendent.

However, CORC records Defendant submitted showing Plaintiff's closed cases do not list complaint FPT-31235-16, which indicates that it was never appealed to CORC. ECF No. 134 at 10-11. Therefore, Plaintiff has not exhausted his administrative remedies for either the December 22 or 31 incidents.

Accordingly, with respect to any claims stemming from the December 22 and December 31, 2015 incidents, Defendant's motion is GRANTED**,** and Plaintiff's motion is DENIED.

## IV.     Qualified Immunity

Defendant argues that even if a question of fact exists as to any of the above alleged claims, summary judgment should be granted in his favor because he is entitled to qualified immunity. The Court disagrees.

> A state official is entitled to qualified immunity unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. A right is clearly established when its contours ... are sufficiently clear that, at the time of the challenged conduct, every reasonable official would have understood that what he is doing violates that right. [G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers, but existing precedent must have placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the *particular* conduct is clearly established.

*Crawford v. Cuomo*, 721 F. App'x 57, 58-59 (2d Cir. 2018) (summary order) (internal quotations and citations omitted) [hereinafter "*Crawford II*"].

Here, there can be no dispute that Plaintiff pleaded Eighth Amendment sexual abuse and excessive force violations and that his right to be free from those abuses was clearly established at the time of the September 22, 2015 incident. *Crawford I* firmly established "an inmate's right to be free of sexual abuse in light of evolving standards of decency," building on the Second Circuit's previous statement in *Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997) that "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Id.* at 58, 59. In *Crawford I*, the Second Circuit held that a pat frisk of an inmate leaving the mess hall in which the officer "squeezed" and "fondled" the inmate's penis and made "demeaning comments" of a sexual nature was a violation of the inmate's Eighth Amendment rights, particularly because the officer's comments "suggest[ed] that [the officer] undertook the search in order to arouse himself, humiliate [the inmate], or both." *Crawford I*, 796 F.3d at 258-59.

Similarly, in the present case, Defendant allegedly squeezed Plaintiff's penis and made a demeaning comment stating that he was going to "fuck" the Plaintiff. Thus, Defendant's alleged conduct was clearly established as violative of the Eighth Amendment. Defendant's reliance on *Shaw v. Prindle*, 661 F. App'x 16, 19 (2d Cir. 2016) (summary order) is unpersuasive. There, the Second Circuit held that a pat frisk was not violative of the Eighth Amendment where it was clearly conducted to search for contraband the officer had just seen despite the inmate's allegations that the search of his crotch and buttocks was excessive and involved the massaging of his rectum and groin. Here, in contrast, and as in *Crawford I*, the pat search was random and involved demeaning comments and very specific allegations of Plaintiff having his penis squeezed "real hard twice, causing painful swelling and bloody urinations." ECF No. 138 at 2.

Furthermore, *Crawford II* makes clear that Defendant is not entitled to qualified immunity because the Second Circuit's August 11, 2015 decision in *Crawford I* was issued prior to the September 22, 2015 incident that gives rise to Plaintiff's alleged constitutional violations. Accordingly, Defendant is not entitled to qualified immunity.

**V.      Plaintiff's Motions *in Limine* and to Appoint Counsel**

Plaintiff appears to make a motion for appointment of counsel and a motion *in limine* to allow his own testimony in lieu of a medical expert to establish that he saw blood in his urine. ECF No. 140 at 6, 9.

There is no constitutional right to appointed counsel in civil cases. Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants. *See, e.g.*, *Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988). The assignment of counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984). The Court must consider the issue of appointment carefully, because "every assignment of a volunteer lawyer deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989). In determining whether to assign counsel, the Court considers several factors, including whether the indigent is able to investigate the facts concerning his claim; whether the legal issues are complex; and whether there are special reasons why the appointment of counsel would be more likely to lead to a just determination. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *Hodge v. Police Officers,* 802 F.2d 58, 61-62 (2d Cir. 1986).

The appointment of counsel is not warranted in this case. The remaining claims in this case are not complex, and from reading Plaintiff's submissions, he is articulate and has

demonstrated the ability to adequately present his own claims. In addition, there are no special reasons that would favor the appointment of counsel.

Finally, the motion to allow Plaintiff's own testimony is one more properly brought prior to the pre-trial conference. Accordingly, Plaintiff's motions *in limine* and to appoint counsel are DENIED WITHOUT PREJUDICE TO RENEW.

## CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 127) is GRANTED IN PART and DENIED IN PART. Plaintiff's Cross Motion for Summary Judgment (ECF No. 137) is DENIED. Plaintiff's motions *in limine* and to appoint counsel (ECF No 140) are DENIED WITHOUT PREJUDICE TO RENEW. Only Plaintiff's Eighth Amendment sexual abuse and excessive force claims stemming from the September 22, 2015 pat frisk survive summary judgment. The Court has set a trial date for July 13, 2020. The Court will issue a separate pre-trial order setting a date for a pre-trial conference.

IT IS SO ORDERED.

Dated: March 9, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court